Good afternoon, your honors. Can I make sure you hear me? Okay. Yeah. Good afternoon. May it please the court. Jeremy Barron on behalf of Alfred Centofanti. If I could, I'd like to save two minutes for rebuttal. We'll try to help you. Thank you. Your honors. I think it goes without saying at this point that we are living through an unprecedented global health crisis. And as extraordinary as these circumstances are for everyone in our society, the situation is dangerous for inmates and particularly inmates with the types of high-risk conditions that Mr. Centofanti has. Now, we of course recognize that interim release is going to be saved for unusual cases and that the same can be said for mandamus. But if there were ever a time when mandamus was appropriate and when interim release was appropriate, this emergency situation is it. Now, I'd like to begin by jumping to what I think is really at the heart of the issue here, which is the increased risk that prisoners like Mr. Centofanti face of infection. When you compare that risk to people who are able to self-isolate 24 seven in a private residence, because... Mr. Barron, I don't want to argue your case for you, but I think at least for me and maybe for my colleagues, I'm far less troubled with the COVID issues, which are all about us. And we read, we're aware of them. And getting to the other part, which is his basically clear right to relief. He may have that. But when you speak to that, for my part, I understand the risk that he faces in being present in a closed, confined situation where he has these severe existing conditions. But how is he under the law entitled to get the relief he needs in order to meet both prongs of dade? Right, so if the question is about mandamus and how we can show clear error, I think we can do that on both prongs. So with the probability of success on the merits, the lower court's decision basically said, I'm not willing to engage with the probability of success because there hasn't been full briefing in this case yet. And our position is that's clearly wrong. There are lots of situations... Please get to the merits. I mean, the hard question, we don't have a whole lot of time, is how good a case does he have at obtaining release? And I'll just start by saying, what do you define when you argue that he has a high probability of success? What does success mean there? Sure. So we think the purpose of that prong is if there is a realistic shot, Mr. Santafonte is entitled to relief and he's entitled to this emergency action. Stop. Stop right there, because you're saying relief, but relief. Suppose he wins on his habeas petition. And that's a big question. Does he get released? So he would likely get rid of habeas corpus requiring the state to either release him or retry him. That seems to me to be an important difference. This is not somebody who has a guaranteed exit from prison if he prevails on his argument. What he would face at that point is presumably a serious possibility of a retrial. I've done on panels that have affirmed or granted habeas relief and almost always in serious crimes, the state takes another run at it. And I don't have any reason to assume the state wouldn't take a run at it here. And we have somebody who at least the Nevada Supreme Court has indicated faces pretty substantial evidence and indeed doesn't appear to deny the fact that that he was the person in question. He's got a self-defense response. But why should we think a chance at a retrial would matter here? I really am cutting to the bottom line because you don't have much time. He was convicted once and nothing in the habeas petition suggests to me that the evidence was defective. The evidence is different. Why should we assume that on a retrial, just because one of the jurors will change, he'd be acquitted? So there's a lot to unpack there. First, I want to emphasize that even if he does get retried, he would still be entitled to bail pending a retrial. And he was out on bail under house arrest conditions with no violations for three years leading up to the first trial. There's no reason to think he couldn't get pretrial release if the state were to retry him. That cuts in favor of interim release here. Let's assume on the next point that the state says that there is no federal violation here, that the fact that the juror failed to disclose the prior felony conviction of 20 established prejudice and McDonough requires prejudice. How does, how is that decision, if it comes along in that fashion, how is that an unreasonable interpretation of federal law on this question as determined by the Supreme Court of the United States? Sure. So let's say it's reasonable to impose that third prejudice prong. We think that prong shouldn't exist, but let's say it's reasonable to impose that the court resolved it without ever giving Mr. Centifanti a hearing to present evidence and cross-examine this juror about her motive for lying. And so the failure to grant a hearing is both contrary to Williams, an unreasonable application of Williams, and separately under D2, it's an unreasonable determination of the facts. So there's a pretty clear path to de novo review, which is rare in federal habeas cases  Then on de novo review, we're confident we'll convince the court this is a two prong test, not a three prong test, and we will win based on the undisputed facts. And based upon Naira and Calderon, which is one of our cases, I'm inclined to agree with you about what would happen in terms of an evidentiary hearing. But I still would get back to Judge Clifton's question, which is assume for a minute that your client gets the hearing, the writ is granted, there's going to be a new trial, but the evidence is compelling here. It's so strong. What difference does this make in terms of what your client's relief, if you will? Well, again, I don't want to repeat myself. I think the fact he's entitled to pre-trial release is relevant. I also think if the rule is you can never get interim release in a case where there could be a retrial, then interim release is never really going to exist because it's a rare type of habeas claim that entitles you to walk out scot-free. You would have to... No, but it's not unusual to have a habeas claim where the key evidence against the offender is taken away. A confession is suppressed, for example. And so the second trial would be very different. We have nothing like that here. The evidence apparently will be exactly the same thing as the evidence the first time. So why should we anticipate a different result? The problem is we don't know what effect this perjured juror had in deliberations. And that's part of why the Sixth Amendment has a structural error protection against ordinary misconduct. So the evidence might not be all that different. The defense might try a different strategy that might lead to a lesser-included offense. But we just don't know what impact this juror had on the deliberations. That's why this is a structural error, why he would be entitled to a new trial. And that chance of success supports release here. The structural error here is, is it not, is that this woman, had the truth been known, would not have been entitled to sit on the jury. So then we don't even get to what role she played, right? That's right. But Your Honor referenced Dyer, and there is another question from Judge Clifton about why would the new trial be different? Well, you would have a trial in front of a jury without, presumably, a juror who has lied to get a seat on the jury. We don't know what impact that juror had here. And that's why a new trial is appropriate and release is appropriate. And if I could reserve the name of the juror. Do you want to save any of your time here? Please, thank you. OK. So, Mr. McDonough, do you agree with him? Good afternoon, Your Honor. May it please the court. Jeffrey Conner on behalf of the respondents. I think if I could start, I'd actually go begin by going straight to Judge Fischer's question and kind of the way that he phrased it. I think when you're looking at McDonough in this situation, there needs to be some sort of prejudice standard or something that goes to the question of the juror's question on whether or not a juror is qualified to sit as a juror on the case. In that situation, you just have that's a question of state law that doesn't trigger the due process clause. And so there has to be something that tests how it impacted the fairness of the trial in order for this to become a federal claim. And so I think. But does this not, with our dire case and also Arizona versus Fulminante, Tunney versus Ohio, it seems to me that when you have a juror that has perjured herself, and we know she did because the jury foreman said that when he was asked about it, that she had lied. So if that's the case, she would have had no chance as a felon to be on the panel at all. Does that not go to where the judge doesn't allow anything to go forward to consider that further? Doesn't that go to undermine some of the preferences and preferences to the showing that there was a structural error here? I don't think so, Your Honor. I think that's exactly what the court means in McDonough when it indicates that only a motive that goes to the jurors impartiality is going to affect the fairness of the trial. And that's exactly the point here is that or what I'm trying to say is that all you're dealing with the question about whether she's a felon or not is a question of whether or not she's qualified to be a juror as a matter of state law. And so that is just merely a question of state law that doesn't trigger any of Mr. Santofani's federal constitutional rights. It only becomes a federal constitutional question if it affects his right to an impartial jury under the Sixth Amendment. And you don't you don't you don't think that a biased juror impacts the Sixth Amendment? I think that that question nails nails the issue is that they have to show some sort of bias, that that the reason that she was dishonest during voir dire is that she has some impartiality towards one of the parties in the proceeding. And she's she's covering something. Question, if the question hasn't been explored, I hear you, but I'm not sure it really gives us a satisfying conclusion at this point in time. And so, Your Honor, that that may be a question under this case is this this court's Tracy decision, Tracy v. Palmateer in deciding whether or not it was reasonable for the Nevada Supreme Court to reach the conclusion it did without remanding for a hearing on this. And that that may go to the 2254 D2 question as well about whether or not he can get past EDPA. But at that point, then he still would under McDonough would have to show an improper motive at an evidentiary hearing. So that's where we're even if we assume that he can get past EDPA in this case, he is still going to have to prove his claim at an evidentiary hearing. And I accept that, but that's still a path ahead of us. And and he's not trying to argue that his client, although he has to argue, I guess, has a great chance of success. He knows his client doesn't have the golden ticket in hand yet, but you can see a potential path to it. And that seems to keep the claim at least alive. Is there a reason why it isn't alive? There's a well, whether it's alive or not is not the question. Your Honor, the question is whether he can go a high probability of success. So it's not is it possible for him to win? It's is there a high probability of success? And they haven't shown a high probability of success. What they've shown is a possibility of success. And that's well, when under Dyer, since this woman didn't have a chance legally to be on the jury and it's structural error when that happens, why would that not indicate a high probability of success? Because I think McDonough controls your McDonough is is is the controlling federal constitutional law here. And as the Supreme Court, even if you look at the Warger case, which they're relying on to say that it's gotten rid of the third column of McDonough, which this court doesn't seem to support because it addressed that aspect of Warger as dicta. But even in Warger, the Supreme Court acknowledged that what was that issue in Warger was whether or not a juror could testify to things that occurred during deliberations, even with respects to dishonesty during Dyer post verdict under federal rule of evidence 606B. And what the court acknowledged there is that if they're trying to show that the juror lied during Dyer to cover up bias, they are either going to have to expose that bias pre verdict or post verdict. They have to rely on something outside of juror testimony because the juror is precluded from testifying about how anything impacted their deliberations. Well, in this case, in this case, the defendant didn't have an opportunity to go back and have an evidentiary hearing. Why why would that be denied? How is the state prejudice if that is done here so he can show one way or another whether McDonough is satisfied that that all that does is is that's exactly what we breached, Your Honor, is that even if you assume he can get past that and get a de novo review of his claim, he gets to an evidentiary hearing, but he gets to an evidentiary hearing and there's still only a possibility of success, not a high probability of success because he's going to have to present that she had an improper motive with respect to her in part that affected her ability to be impartial in the case before he's entitled to relief under McDonough. So from your perspective, there's there's no structural error here, he's got to prove that her she had bias and in order for him to get relief, if if he can prove bias, then that that establishes, yes, that's what he has to show, but that's and that's the way this breaks down. When you look at what McDonough says, you know, they have to establish that there was dishonesty about something that would disqualify them for a juror, but then immediately following that McDonough acknowledges that the reason for the dishonesty has to be something that goes to their impartiality. Now, this is a mandamus action. Uh, could they have filed a collateral appeal for the denial of the relief request for release before the district court? I don't, I don't know if they could. I mean, they could have, you know, if it fits within the collateral order doctrine, it potentially does. Um, and you know that, but that, you know, that goes to the point here that in order for him to get relief here, he, he has to establish clear error by the district court. That's mandatory under this court's, the factors this court considers in addressing the availability of mandamus relief. And that builds back into, I know Judge Smith said, you know, we're all familiar with the concerns of COVID here, but under this court's case in N. Ray Rowe, where this court in a pre-decision release determined that medical concerns were completely irrelevant to the question, unless the petitioner could show that the department of corrections was incapable of providing him with the care that he needed. And there simply is no showing of that here. The Nevada department of corrections has done an overwhelming job of taking care of its inmates. The federal district court is keeping close tabs on this. In other cases, the department of corrections has been providing, uh, regular updates to the district court. So that how, how, how many, how many people, how many people have currently been tested for that? I'm shown to have COVID where this man is incarcerated. Uh, that I didn't know of your honor there, there have been over 11,000 tests throughout the entire department of corrections. And we've got 15 inmates that have tested positive out of over 11,000 tests that have been done. Um, I, at this point, I don't know that it's public information, exactly how many positive tests there are at any individual institution. And I'm not sure that I have the client's authorization to, uh, the department of corrections authorization to disclose that publicly. But if the court is, is interested in, in that information, I'd be happy to work with the department of corrections to file something under seal. Are we, are we as judges, but also members of the public entitled to take into account what we read generally? Or do we have to get, in this case, information from, uh, the parties to determine the risk to this man and on that part of the problem? I see that I'm over my time. If I could, As long as we're asking you a question, go ahead. Um, you know, uh, potentially that if there's, there's information that's readily ascertainable in a, in a newspaper article or something like that, that, that the court wanted to take judicial notice of it, it probably could do that. Um, but it's got, it's got to be something that would fit. Like the Johns Hopkins, Johns Hopkins site. Yeah. So if it's something that this court could take judicial notice of, certainly. Okay. Any other questions by my colleague for this gentleman? I guess not. So Mr. Barron. Thank you. Just to answer a couple of those questions quickly. My understanding is there are 11 inmates at High Desert where Mr. Santafonte is who tested positive. As far as mandamus versus collateral order under this court's case law, we cannot take an interlocutory appeal. We filed an initial en banc petition on that. And that's something that we may need to continue litigating. Um, as far as the actual risk here, if the court has any doubts about what the risks are to Mr. Santafonte in prison, at the very least the lower court should have held hearing on that. And if I could just back up and make one final point, what we're asking for here is not release forever. We're, we're not asking the court to order release as a final matter. We're asking the court to order interim release during this emergency situation. If we get a vaccine or the pandemic, uh, goes away, then we agree. Mr. Santafonte will go back into custody in prison to continue litigating this petition. But the question here is he has a substantial claim for relief. Maybe there are some questions about it, but it is a very substantial claim for relief. Some petitions you look at and you can say, there's not really a realistic path here. Here there is. And the question is, should our client have the right to continue litigating that to final judgment without the imminent threat of death that he currently faces while being in prison? Uh, and unless the court has any questions, I appreciate your time. Very well. Any other questions by my colleague? None. I think, thank, thank you gentlemen, both of you for your help in this challenging case. The case of, uh, Santafonte versus Nevin is submitted.
judges: Fisher, Clifton, M. Smith